**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

WASEEM DAKER,

    Plaintiff,

v.

GREGORY DOZIER, et al.,

    Defendants.

CIVIL ACTION NO.: 6:18-cv-73

## O R D E R

The Court has conducted an independent and de novo review of the entire record and concurs with the Magistrate Judge's Report and Recommendation, (doc. 13). Plaintiff first submitted a Motion to Extend Time to Object, asserting that he needed more time to prepare and file his Objections. (Doc. 14.) Despite that assertion, Daker filed a 44-page document styled as his "Partial Objections" on March 28, 2019.[1] (Doc. 15.) After consideration of Daker's partial Objections, (doc. 15), the Court finds that nothing in these Objections alters the Magistrate Judge's

---

[1] The Magistrate Judge issued the Report and Recommendation on March 7, 2019. (Doc. 13.) The record before the Court reflects that a copy was mailed to Plaintiff the same day. Thus, Daker had until March 25, 2019, to file his Objections or to make a timely request for an extension. See Daker v. Comm'r, Georgia Dep't of Corr., 820 F.3d 1278, 1286 (11th Cir. 2016) (stating that prisoners have 17 days to file objections to a Report and Recommendation (citing Fed. R. Civ. P. 6(d), 72(b)(2))); see also Forde v. Miami Fed. Dep't of Corr., 730 F. App'x 794, 800–01 (11th Cir. 2018) ("The prison mailbox rule provides that a pro se prisoner's legal submission is considered filed on the date it is delivered to prison authorities for mailing."); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (noting that "absent evidence to the contrary," courts "assume that [a prisoner's pleading] was delivered to prison authorities the day [the prisoner] signed it."); see also Fed. R. Civ. P. 6(a)(1)(C) (providing that, when computing a time period where "the last day is a Saturday, Sunday, or legal holiday," the time period "continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). Daker signed his Motion on March 18, 2019, and the envelope bears a March 22, 2019 postmark. (Doc. 14, pp. 1–2.) Similarly, Daker's Partial Objections were signed and postmarked on March 24, 2019. (Doc. 15, pp. 43–44.) Thus, even though the Court received Daker's Motion and his Partial Objections on March 26 and March 28, respectively, both are timely filed.

conclusion that Daker should be denied *in forma pauperis* status. The Court, therefore, **OVERRULES** Daker's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation as the Order of the Court. The Court **DENIES** Daker's Motion to Extend Time to Object, (doc. 14), and will not consider any other objections postmarked after March 25, 2019.[2] The Court also **DENIES** Daker's request for emergency remand for evidentiary hearing, (doc. 15, p. 30).[3] The Court **DISMISSES without prejudice** Plaintiff's Complaint, (doc. 1), **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENIES** Plaintiff *in forma pauperis* status on appeal.

## I.  Daker's Motion to Extend Time, (doc. 14)

Rule 6(b) allows courts to extend filing deadlines when a party makes a timely request and shows good cause to do so. Fed. R. Civ. P. 6(b). Thus, "[a] request for an extension, made before the expiration of the deadline, should be granted where good cause is shown." Sensi v. Fla. Officers of Court, 737 F. App'x 433, 436 (11th Cir. 2018); Shepherd v. Wilson, 663 F. App'x 813,

---

[2] Because the time to file objections is now past, Daker's self-styled "Partial Objections," (doc. 15), are, in fact, his full Objections. Additionally, in his Motion, Daker indicated that he intended to file objections to both the Report and Recommendation, (doc. 13), and the Court's Order, filed the same day, which denied Daker leave to proceed *in forma pauperis*, (doc. 18). (Doc. 15, p. 1.) In denying the Motion to Extend Time to Object, the Court is denying Daker any additional time to file any Objections to either the Report and Recommendation or the Order denying *in forma pauperis* status. See Fed. R. Civ. P. 72 (setting the same time period for filing objections to both dispositive and non-dispositive rulings from a magistrate judge).

[3] Daker requests an "emergency remand" for an evidentiary hearing, arguing that the evidentiary hearing would be especially helpful because "each of the forcible shavings at issue were videotaped" and the recordings will prove that "there was no need to forcibly shave Plaintiff" and that "on each occasion, [D]efendants forcibly shaved him with unsantized clippers." (Doc. 15, p. 30.) First, the issue before the Court is whether Daker may proceed without prepayment of filing fees, not whether the forcible shaving was necessary or whether it occurred with unsanitized clippers. For purposes of this Order, the Court accepts as true that these forcible shavings occurred and that unsanitized clippers were used each time. Moreover, because the purposes of the Prisoner Litigation Reform Act ("PLRA") is to curb abusive litigation, it follows that evidentiary hearings on preliminary issues such as imminent danger or exhaustion of administrative remedies should rarely be granted. See, e.g., Stephens v. Howerton, No. CV 105-171, 2007 WL 1810242, at *11 (S.D. Ga. June 21, 2007); Williams v. Rich, No. CV 606-003, 2006 WL 2534417, at *5, n.5 (S.D. Ga. Aug. 30, 2006).

817–18 (11th Cir. 2016); United States v. Johnson, No. 1:05-CR-1, 2011 WL 66044, at *1 (N.D. Fla. Jan. 7, 2011) (denying, in a criminal case, a request for an extension of time to file objections when defendant failed to show good cause). "To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence." Ashmore v. Sec'y, Dep't of Transp., 503 F. App'x 683, 685 (11th Cir. 2013).

Though Daker timely filed his Motion, he fails to show that good cause justifies his request for an extension. The Magistrate Judge recommended dismissal because Daker has filed at least three previous actions which courts dismissed as frivolous, and Daker failed to show he was in imminent danger of a future physical injury at the time he filed his Complaint. (Doc. 13, pp. 8–9 (citing Smith v. Clemons, 465 F. App'x 835, 836 (11th Cir. 2012).). In support of his Motion, Daker argues that he needs more time because he is pro se, incarcerated, and "needs outside assistance from family members or friends to assist with preparing and filing his Objections." (Doc. 14.) However, Daker does not explain what additional Objections he might raise if he were given additional time, nor does he explain why he requires additional outside assistance.[4] Additionally, Daker does not explain why his incarceration and pro se status prevent him from meeting the deadline for objections "despite his diligence." FTC v. Lalonde, 545 F. App'x 825, 835 (11th Cir. 2013) (finding no error in denying an incarcerated plaintiff's motion for a discovery extension when the plaintiff "did not show that the deadline for discovery could not be met despite his diligence"). Further, some impairment of Daker's "civil litigating capacity" is "one of the constitutional consequences of his incarceration." Id.

---

[4] However, the subsequently-filed Partial Objections, (doc. 15), provide some guidance on what Daker might argue. As further explained below, nothing in these Objections demonstrates that Daker was in imminent danger of a serious physical injury at the time he filed his Complaint. Additionally, the Court notes that Daker's Partial Objections contain a hodgepodge of arguments, many of which this Court has previously considered and dismissed. Here, Daker filed the same document containing the same Partial Objections in two different cases and, within his Objections, continually refers to filings not contained within the present action and which may have taken place in other litigation.

Moreover, Daker's assertion that he needs more time to formulate his objections is vitiated by his own filings of record. First, Daker timely filed 44 pages of Objections, despite this Motion. (Doc. 15.) Even if Daker had not submitted such voluminous Objections, he knew the Court would issue a Report and Recommendation in his case and filed—not just one, but two—motions to expedite the Court's requisite frivolity review. (Docs. 14, 17.) Daker's simultaneous attempts to expedite the Court's rulings and to extend his own time to respond weigh against a finding of good cause. In both of his motions to expedite, Daker asserted that his claims should proceed because he was in imminent danger of physical injury. (Docs. 14, 17.) Thus, Daker was well aware that the Magistrate Judge's Report and Recommendation would be forthcoming and that he may have to prepare legal and factual defenses regarding his imminent danger claim. Notably, Daker is a well-known litigant with an extensive history of filing federal lawsuits. Daker v. Bryson, No. 5:15-CV-88, 2015 WL 4973548, at *1 (M.D. Ga. Aug. 20, 2015) ("A review of court records . . . reveals that Plaintiff has filed more than one hundred federal civil actions and appeals since 1999."); Daker v. Warren, No. 1:11-CV-1711, 2014 WL 806858, at *1 (N.D. Ga. Feb. 28, 2014) ("Waseem Daker is an extremely litigious state prisoner[.]"); see also Mathis v. Smith, 181 F. App'x 808, 809–10 (11th Cir. 2006) ("When considering the issue of frivolity, 'a litigant's history of bringing unmeritorious litigation can be considered.'" (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001))).

While he would not be able to prepare the precise objections until he received the Report and Recommendation, nothing prevented Daker from preparing any additional factual evidence or legal argument beforehand. In fact, if more evidence existed, Daker could easily have submitted it to the Court for consideration before frivolity review. Because Daker's Partial Objections, (doc. 15), were timely filed, the Court will consider them. However, because Daker fails to show good cause for an extension, the Court **DENIES** Plaintiff's Motion to Extend Time to Object, (doc. 14).

**II.     Daker's Objections, (doc. 15)[5]**

    **A.     Imminent Danger of Serious Physical Injury**

Next, Daker argues that he faces—and since early 2015 has faced—an "ongoing danger" that physical force will be used against him. (Doc. 15, pp. 12–14.) He cites to multiple sources of authority to show that prison officials are not justified in using force to effectuate these shavings. (Id.) He argues that, even if the grooming policy was valid (a point he does not concede), "it does not follow that force is justified to maintain it." (Id.)

Daker is correct that the imminent danger standard does not require prisoners suffer a physical injury before bringing suit. However, he still fails to show that an "ongoing danger" of forced shavings creates an imminent danger of serious physical injury. More importantly, questions around the justification for use of force go to the merits of Daker's actions. The question currently before the Court is not whether prison officials are justified in their use of force, but rather, whether Daker has sufficiently alleged that he faced an imminent danger of physical injury at the time he brought his Complaint. It may be that prison officials cannot forcibly shave Daker in the manner which he alleges.[6] However, the issue the Court must currently determine is whether Daker faced an imminent danger of a serious physical injury at the time he brought his Complaint.

---

[5] Daker argues that the Magistrate Judge erred by construing the facts asserted by Daker against Daker, rather than in his favor. That is incorrect. A plain reading of the Magistrate Judge's Report and Recommendation demonstrates that the Magistrate Judge construed all facts alleged in Daker's favor and assumed those facts to be true for purposes of the three-strikes review. Moreover, it is entirely appropriate for the Magistrate Judge to weigh Daker's history as a serial litigant when considering whether his claims are sufficiently serious as to allow him to proceed without payment. Mathis v. Smith, 181 F. App'x 808, 809–10 (11th Cir. 2006) ("When considering the issue of frivolity, 'a litigant's history of bringing unmeritorious litigation can be considered.'" (quoting Bilal, 251 F.3d at 1349)); see Skillern v. Paul, 202 F. App'x 343, 344 (11th Cir. 2006) (considering, during the analysis of imminent danger under Section 1915(g), that "the PLRA was enacted to 'curtail abusive prisoner litigation'"); see also Daker v. Comm'r, Ga. Dep't of Corr., 820 F.3d 1278, 1281 (11th Cir. 2016) ("Daker has submitted over a thousand pro se filings in over a hundred actions and appeals in at least nine different federal courts."); Daker v. Warren, No. 1:11-cv-1711, 2014 WL 806858, at *1 (N.D. Ga. Feb. 28, 2014) ("Waseem Daker is an extremely litigious state prisoner . . . .").

[6] Indeed, the issue is currently being litigated in Smith v. Owens, 848 F.3d 975 (11th Cir. 2017).

5

If so, then Daker's claim may proceed without prepayment of cost. If not, then this action will be dismissed, but dismissal would not foreclose the claim. If Daker chooses, he may proceed with his claim simply by refiling it and paying the costs up front. But, the underlying merits of forcible shaving and grooming policies are not currently before the Court.

Notably, Daker must show not that he is currently or has been under threat of imminent danger, but rather, that he faced an imminent danger of physical injury at the time he filed his complaint. See Owens v. Schwartz, 519 F. App'x 992, 994 (11th Cir. 2013) ("A prisoner who qualifies under imminent danger of serious physical injury at the time that he filed his complaint, however, can proceed [*in forma pauperis*]."). Here, Daker originally submitted an 88-page Complaint and supplement at the time he filed this action. Additional factual arguments must therefore be extremely limited in scope—any new fact-based allegations are only relevant if they pertain to the dangers Daker faced at Macon State Prison on or around July 2, 2018, when he initially filed this action. (Doc. 1.)[7]

First, Daker argues he faces an ongoing imminent danger because the prison uses unsanitized clippers every time he is forcibly shaved. (Doc. 15, pp. 5, 23.) This argument does not alter the Magistrate Judge's conclusion that Daker's assertion that use of unsanitized clippers may lead him to contract HIV or hepatitis is merely "hypothetical conjecture" which is insufficient to sustain a finding of imminent danger. (Doc. 13, pp. 11–12.) As the Magistrate Judge noted, this case—like Daker's other cases challenging the GDC's grooming policy—involves "duplicative, longstanding allegations of imminent harm [from] infectious diseases which have never come to fruition." (Id. at p. 12 n.14.) Daker alleges in this case that the forcible shavings began in 2015, though in other cases, he has claimed that such shavings began as early as 2012.

---

[7] Daker complains of conduct occurring while he was incarcerated at Georgia State Prison, as well as conditions at Macon State Prison, where he was incarcerated at the time he filed his Complaint. (Doc. 1.)

6

(Doc. 13, p. 11 & n.13.) However, Daker never states that he has personally contracted any communicable disease from the unsanitized clippers, nor does he provide even one instance of another inmate who contracted a disease. While prisoners are not required to show they have personally contracted a disease in order to successfully claim imminent danger, simply pointing to a "documented causal link" between unsanitized tools and disease is not enough to show that Daker, specifically, suffers risk of disease from the prison's use of unsanitized shaving tools. (Doc. 15, pp. 27–28.) The Court's consideration of the lack of disease does not, as Daker alleges, create a situation where there is no way to bring an imminent danger claim. Rather, the length of time such conditions have persisted without any infection, coupled with Daker's allegations of frequent forced shaves and the prison's common and widespread practice of providing inmates with unsanitary grooming materials, are factors which speak directly to Daker's risk of injury. These factors weigh strongly against a finding of any "imminent" danger.

In his Objections, Daker also argues that he faces imminent danger of serious physical injury due to the force used in the prison's implementation of grooming policy. (Id. at pp. 11–22.) This includes the prison's use of handcuffs, chemical sprays, and other restraints during the forcible shavings. For the first time in this action, Daker states that prison officials used a chemical spray on him during three forced shaves on November 10, 2016, January 10, 2017, and, finally, on September 18, 2018, about six months after Daker filed this action.[8] (Id. at p. 21; Doc. 1.) As a result, Daker suffered skin irritation, characterized as a "burn," which lasted "over a week." (Doc. 15, p. 7.) This is a new factual allegation, as Daker did not assert that prison officials used chemical sprays on him in any of his prior filings in this action. (Doc. 1; Doc. 13, p. 11.) Regardless, it is difficult to see how this additional fact shows that Daker was in imminent danger

---

[8] As Daker admits, he has already filed multiple actions to challenge these forced shaving practices, including the use of chemical sprays during forced shavings. (Doc. 15, pp. 3 & n.1, 21.)

7

of a serious physical injury at the time he filed his Complaint. Like the bruises, split toenails, and minor scrapes of which he complains, a skin rash lasting slightly over a week is not a serious physical injury. Rather, it is the natural and anticipated result of the use of chemical agents on a prisoner who is actively resisting prison guards ordered to implement a Georgia Department of Corrections ("GDC") policy. Daker does not state the skin rash was so severe as to require medical attention, nor does he describe any long-lasting, permanent, or life-threatening consequences. See, e.g., Jackson v. Jackson, 335 F. App'x 14, 15 (11th Cir. 2009) (finding imminent danger of physical injury when plaintiff-prisoner alleged that he faced "face tissue death, gangrene, and internal bleeding" due to lack of medical attention). Daker may pay the filing fee if he desires to litigate the underlying merits of such forcible shavings and the use of force, including chemical agents, to effectuate the GDC grooming policy. However, a skin injury lasting only days or weeks does not constitute a serious physical injury sufficient to overcome 28 U.S.C. § 1915(g) and allow Daker to proceed *in forma pauperis* in this action.

Not only does Daker not face serious physical injury, there are multiple factors which weigh against a finding that Daker is in *imminent* danger of any physical injury. First, Daker alleges he faced imminent danger during his confinement at Macon State Prison, and he has since been transferred to Valdosta State Prison. (Doc. 10.) This transfer makes it less likely that Daker can assert new facts upon which his imminent danger allegation may rest. See, e.g., Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (finding no error in denying a plaintiff-prisoner leave to amend when the prisoner had been transferred after filing his complaint because any additional allegations of imminent danger faced at the new prison would be futile). Notably, though Daker alleges that he has been subjected to around 14 forced shaves since 2015, only three of these involved the use of chemical spray. (Doc. 15, pp. 7, 26.) While Daker may be subject to a forcible shaving while confined to any GDC institution, he does not provide any facts which show that the

8

new prison officials are also likely to employ chemical sprays. Thus, Daker fails to show he imminent danger at the time he filed the Complaint.

Daker devotes six pages of his 44-page Objections to attacking the Magistrate Judge's conclusion that Daker created the imminent danger he allegedly faces. (Id. at pp. 14–20.) First, the Magistrate Judge based his finding on other grounds in addition to finding that Daker's "danger," to the extent it exists, is self-created (specifically, that Daker did not show the danger he faced was imminent, nor that it was likely to result in a serious physical injury). (Doc. 13, pp. 11–12.) Second, Daker argues that the finding of the Magistrate Judge in this regard "opens a dangerous can of worms." (Doc. 15, p. 19.) Daker then proceeds to propose a series of hypotheticals that he asserts show the error in holding that he created the own danger that he faces. (Id. at p. 20.) However, the Court is not charged with resolving hypothetical disputes. Instead, the Court must decide if Daker created his own harm in this case.

To the extent Daker asserts he is not subjecting himself to this imminent danger, he is incorrect. Daker is not forced to choose between punishment for expressing his professed religious belief and compliance with prison regulations. The result is the same whether Daker complies with prison policy or does not—in either scenario, he cannot grow a beard of his desired length. Daker's resistance does not allow him to express his professed religious belief. Instead, it merely manufactures the "imminent danger" which Daker asserts and then results in the same outcome as if he had complied with regulations. Daker could certainly challenge the constitutionality of the prison policy while complying with it. If Daker chose to do so, he could not avoid paying filing fees due to an imminent danger of physical injury. For all of the reasons above, the Court finds Daker failed to meet his burden of demonstrating an imminent danger of serious physical harm.

### B. The Constitutionality of Section 1915(g)

Daker specifically concedes that the cases the Magistrate Judge cited as strikes "were both filed by Mr. Daker and dismissed as frivolous." (Doc. 15, pp. 26–27, 33–34.) However, Daker alleges that the "three-strikes" provision in Section 1915(g) is unconstitutional. First, the Court notes that this is not the first time Plaintiff has made this argument, nor the first time this Court has dismissed it. See Daker v. Bryson, 6:16-cv-57 (S.D. Ga. Mar. 20, 2017). Daker states the Rivera decision did not address each and every constitutional challenge to Section 1915(g), such as the issue of the First Amendment "breathing space" principle. (Doc. 15, pp. 31–44.) Additionally, Plaintiff challenges Section 1915(g) on equal protection grounds. (Id.) Plaintiff also maintains Section 1915(g) violates his right to access to the courts.

In Rivera v. Allin, the Eleventh Circuit Court of Appeals answered many of Plaintiff's present challenges to Section 1915(g). 144 F.3d 719 (11th Cir. 1998), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199 (2007). Specifically, the Eleventh Circuit determined Section 1915(g) does not violate a prisoner-plaintiff's right of access to the courts. Rather, the Court stated that Section 1915(g) "does not prevent a prisoner with three strikes from filing civil actions; it merely prohibits him from enjoying IFP ["*in forma pauperis*"] status." Id. at 723–24 (first alteration in original) (citing Carson v. Johnson, 112 F.3d 818, 821 (5th Cir. 1997) (rejecting plaintiff's claim that Section 1915(g) is unconstitutional because it blocks access to the courts), and Lyon v. Krol, 127 F.3d 763, 765 (8th Cir. 1997) ("Section 1915(g) does not prohibit prisoners from pursuing legal claims if they have had 'three strikes' or three prior dismissals. It only limits their ability to proceed [IFP].")). The Eleventh Circuit asserted "proceeding IFP is a privilege, not a right—fundamental or otherwise." Id. at 724. The Eleventh Circuit continued by stating that Rivera's claims of deliberate indifference to serious medical needs did not implicate a fundamental right, such as "state controls or intrusions on family relationships." Id. (internal citation omitted).

The Eleventh Circuit also determined the three strikes provision does not violate a litigant's right to due process or to equal protection. Id. at 727 (citing Parsell v. United States, 218 F.2d 232, 235 (5th Cir. 1955) (denying leave to proceed IFP "does not offend the requirements of due process"), and Hampton v. Hobbs, 106 F.3d 1281, 1287 (6th Cir. 1997) ("Hampton's ability to petition the government for redress of grievances has not been deprived or limited by the [PLRA] and thus that interest cannot provide the basis for a due process violation.")).

As for an equal protection argument, the Eleventh Circuit noted the equal protection clause is not implicated if a law does not burden a fundamental right or target a suspect classification. Id. The Eleventh Circuit determined that Rivera did not and could not contend "that prisoner indigents (specifically, frequent filer prisoner indigents) form a suspect or quasi-suspect class." Id. (citations omitted). The Court had already rejected Rivera's fundamental rights argument and declined his "invitation to review section 1915(g) under any standard more onerous than rational basis." Id. The Eleventh Circuit noted Congress enacted Section 1915(g) to curb "abusive prisoner tort, civil rights and conditions litigation" and to preserve "scarce judicial resources" and determined this law serves those ends "through its requirement that prisoner indigents with three strikes prepay the entire filing fee before the court may further review their lawsuit (unless imminent danger of serious physical injury exists)." Id.

The Seventh Circuit Court of Appeals had occasion to tangentially address the "breathing space" principle Plaintiff advances here. Lewis v. Sullivan, 279 F.3d 526 (7th Cir. 2002). In Lewis, the Seventh Circuit reversed the judgment of the district court that Section 1915(g) "would be unconstitutional unless read to allow judges to dispense with prepayment whenever, in their discretion, they viewed the prisoners' claims to be substantial." Lewis, 279 F.3d at 527 (citing 135 F. Supp. 2d 954 (W.D. Wis. 2001)). In so doing, the Seventh Circuit looked to the decisions of the other seven Courts of Appeals concerning constitutionality challenges to Section 1915(g),

including the Eleventh Circuit's decision in Rivera. The Seventh Circuit noted Section 1915(g) had been challenged on several grounds, including the right to access the courts, due process, and the First Amendment right to petition for redress of grievances, and none of the challenges had been successful. Id. at 528 (collecting cases). The Seventh Circuit agreed with its sister Circuits which had decided the issue and found the "decisions to be sound," because "there is no constitutional entitlement to subsidy." Id. "Federal courts are subsidized dispute-resolvers; filing fees defray only a small portion of the costs. A requirement that plaintiffs cover some of these costs cannot be called unconstitutional. The Supreme Court has never held that access to the courts must be free; it has concluded, rather, that reasonably adequate opportunities for access suffice." Id. (citing Lewis v. Casey, 518 U.S. 343 (1996)). This Court agrees with the Seventh Circuit's analysis and conclusion.

Daker's constitutional challenges to Section 1915(g), whether generally or to his situation, are without merit, as has been determined by the Eleventh Circuit, other Courts of Appeals, and this Court. What is more, Daker does not attempt to show how Section 1915(g) violates *his* constitutional rights. Instead, Daker makes blanket statements in this regard. However, even if Daker had provided reasoning in support of his arguments, such reasoning would be without merit. Having to prepay his filing fee before the Court addresses the relative merits of his claims, unless he shows he is in imminent danger of serious physical injury, does not violate Daker's rights. Consequently, the Court **OVERRULES** this Objection.

## CONCLUSION

The Court **OVERRULES** Daker's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation as the opinion of the Court. The Court **DENIES** Daker's Motion to Extend Time, (doc. 14), and his request for emergency remand for evidentiary hearing, (doc. 15, p. 30). The Court **DISMISSES without prejudice** Plaintiff's Complaint, **DENIES** Plaintiff *in*

*forma pauperis* status on appeal, and **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**SO ORDERED**, this 9th day of April, 2019.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA